```
        IN THE UNITED STATES DISTRICT COURT FOR THE
               EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division

LINDA MUSSELMAN,                )
                                )
        Plaintiff,               )
                                )
     v.                         )    1:06cv845(JCC)
                                )
MERCK & CO., INC.               )
                                )
        Defendant.               )
```

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendant's motion to dismiss Counts II and III of Plaintiff's complaint. For the following reasons, the Court will grant Defendant's motion as to Count II and deny Defendant's motion as to Count III.

### I.  Background

Plaintiff, Linda Musselman, has brought this action against Defendant, Merck & Company, Inc. ("Merck"), alleging that Merck refused to accommodate her and terminated her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and that Merck intentionally and negligently caused her emotional distress. According to the allegations of the complaint, Merck formerly employed Musselman in a management position in its manufacturing division. Early in 2001, Musselman began to suffer near-daily migraines and extreme fatigue, and in April 2001, she was hospitalized for several days because of the migraines. After her hospital stay, she returned to work but

continued to experience fatigue and extreme chest pains. During this time period, several doctors diagnosed Musselman with depression.

In early 2004, Musselman informed her direct supervisor that she was planning to resign from Merck because of her deteriorating health. Upon the advice of this supervisor and several other colleagues, however, Musselman decided not to resign, took a leave of absence, and went on short-term disability in May 2004. Because Musselman's short-term disability program was set to expire in November 2004, she applied for long-term disability in October 2004. This claim was denied after a plan official concluded that Musselman did not suffer from a "total disability" and that she was able to engage in at least some of the material aspects of her position.

After the denial of long-term disability, Kathy Patton, a Human Resources Director at Merck, sent Musselman a letter demanding that she return to work by February 15, 2005 or be terminated. Musselman requested an extension of her unpaid leave of absence, based on the orders of her doctors. Merck granted the request. In February 2005, Musselman became suicidal, was hospitalized, and was diagnosed with bipolar disorder. Musselman directly informed one of her supervisors at Merck of the diagnosis, and Merck was further notified of the diagnosis by a letter dated April 1, 2005.

On May 26, 2005, Patton issued a second letter demanding that Musselman return to work by June 15, 2005 or be terminated.  In response, Musselman requested an additional leave of absence, citing her doctors' advice.  Merck denied the request, and Musselman then requested permission to telecommute from her Virginia residence rather than return to her Pennsylvania office.  Merck also denied this request.  Finally, Musselman requested to be placed in a less stressful position and be allowed to utilize some of her contacts within Merck to secure such a position.  Patton rejected the latter portion of this request, informing Musselman that she would have to work solely through Patton's office to secure another position at Merck.  On June 15, 2005, Patton informed Musselman that Merck was not prepared to offer her another position.  On the same date, Merck terminated Musselman's employment.  This action followed.

Count I of Musselman's complaint alleges that the above series of events violated her rights under the ADA.  Count II alleges that Merck's actions constituted intentional infliction of emotional distress, and Count III alleges a claim for negligent infliction of emotional distress.  On August 11, 2006, Merck filed a motion to dismiss Counts II and III of the complaint.  This motion is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

## III. Analysis

A. Choice of Law

The first question for the Court's consideration is whether Virginia law or New Jersey law governs Musselman's emotional distress claims. A federal court sitting in diversity must apply the law of the state in which it sits, including the state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In tort actions, it is

well-settled that Virginia applies the rule of *lex loci delicti*, the law of the place of the wrong.  *See Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998); *Jones v. R.S. Jones & Assoc.*, 431 S.E.2d 33, 34 (Va. 1993).  Virginia law defines the place of the wrong as "the place where the last event necessary to make an act liable for an alleged tort takes place."  *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (internal quotation marks and citations omitted).

Merck argues that the applicable law is where the act of Musselman's termination occurred.  Because Musselman's complaint alleges that her termination was effected through a communication from Kathy Patton, Merck claims that the Court can fairly infer that the act of termination occurred in New Jersey, where Merck's headquarters and Patton's office were located.  Accordingly, Merck contends that New Jersey law applies to Musselman's tort claims.  The Court disagrees.

Where a plaintiff alleges a claim for wrongful termination, the applicable law is that of the place where the termination was effected.  *See Mullins v. Int'l Union of Operating Engineers*, 214 F. Supp. 2d 655, 666-67 (E.D. Va. 2002).  With respect to the law governing such a claim, the location where the plaintiff received notice of her termination and the location where plaintiff felt the effects of the termination are irrelevant.  *See id.*  In this case, however, Musselman does not

allege a claim for wrongful termination.  Under the intentional and negligent infliction of emotional distress theories espoused by Musselman, the plaintiff's damages are not merely the effects of the defendant's wrongful action; they are an essential element of the cause of action itself.  *See Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (holding that the plaintiff must plead and prove "severe emotional distress" in order to establish a claim for intentional infliction of emotional distress).  Thus, Musselman's injuries cannot be characterized as mere effects of the termination.  Because the injuries were necessary to complete Musselman's tort claims, the law of the place where she first suffered those injuries must govern.  *Cf. Quillen*, 789 F.2d at 1044 (holding that under Virginia law, the plaintiff's products liability action for personal injury was governed by the law of the place where she first became ill).  Musselman alleges that she suffered her injuries in Virginia; therefore, Virginia law applies.

B.  <u>The Virginia Worker's Compensation Act</u>

Merck argues that Counts II and III are barred by the exclusivity provision of the Virginia Worker's Compensation Act ("VWCA").  This statute provides:

> The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at

>common law or otherwise, on account of such injury, loss of service or death.

Va. Code § 65.2-307.  Of course, whether the exclusivity provision applies depends on whether Plaintiff's claims are compensable under the VWCA, the issue that is the subject of the parties' dispute.

The VWCA provides a mechanism for compensation for "occupational diseases."  An "occupational disease" is "a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment."  Va. Code § 65.2-400(A).  The VWCA gives further content to the definition of "occupational disease" as follows:

>A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances:
>
>1. A direct causal connection between the conditions under which work is performed and the occupational disease;
>
>2. It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;
>
>3. It can be fairly traced to the employment as the proximate cause;
>
>4. It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column;
>
>5. It is incidental to the character of the business and not independent of the relation of employer and employee; and

> 6. It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

Va. Code § 65.2-400(B).  In some circumstances, "[a]n ordinary disease of life to which the general public is exposed outside of the employment" should also be treated as an "occupational disease."  *See* Va. Code § 65.2-401.  To establish that an "ordinary disease of life" is an "occupational disease," the claimant must prove by clear and convincing evidence that "the disease exists and arose out of and in the course of employment as provided in § 65.2-400 with respect to occupational diseases and did not result from causes outside of the employment," and that, *inter alia*, the disease "is characteristic of the employment and was caused by conditions peculiar to such employment."  *Id.*

In *Fairfax County Fire & Rescue Dep't v. Mottram*, 559 S.E.2d 698 (Va. 2002), the Virginia Supreme Court held that post traumatic stress disorder ("PTSD") can, in some circumstances, be compensable as an occupational disease.  *Id.* at 703.  Merck seeks to analogize Musselman's emotional distress claims to the PTSD claim at issue in *Mottram*, arguing that Musselman also seeks compensation for emotional trauma that accumulated over time.  Indeed, *Mottram* reveals that such cumulative stress claims may be covered by the VWCA.  As the *Mottram* court recognized, however, "PTSD is, in some situations, an ordinary disease of life."  *Id.*

A determination of whether a cumulative stress claim is compensable under the VWCA requires a case-by-case evaluation of the particular circumstances of the claimant's disease in light of the factors set forth in Va. Code §§ 65.2-400; 65.2-401. *See id.* at 704 ("In other words, each case turns upon its own facts.").

In this case, Musselman's complaint necessarily alleges the existence of a causal connection between Merck's actions and her emotional distress. It is quite impossible, however, for the Court to currently evaluate whether, for example, Musselman's condition "had its origin in a risk connected with the employment and flowed from that source as a natural consequence" or whether Merck's actions merely exacerbated Musselman's condition. *See* Va. Code § 65.2-400(B)(6). Similarly, the Court is unable to determine, on the basis of the record before it, whether Musselman's emotional distress is "a disease to which an employee may have had substantial exposure outside of the employment." *See* Va. Code § 65.2-400(B)(4). These are "medical issue[s] to be decided by the trier of fact based on the evidence presented." *Mottram*, 559 S.E.2d at 703 (quoting *Knott v. Blue Bell, Inc.*, 373 S.E.2d 481, 483 (Va. App. 1988)). At this preliminary stage in the proceedings, the Court is simply unable to conclude that Musselman's emotional distress is an occupational injury covered by the VWCA.

C.  <u>Failure to State a Claim for Negligent Infliction of Emotional Distress</u>

Virginia law allows recovery under a theory of negligent infliction of emotional distress if the plaintiff pleads and proves by clear and convincing evidence that she suffered a physical injury that was "the natural result of fright or shock proximately caused by the defendant's negligence." *Hughes v. Moore*, 197 S.E.2d 214, 219 (Va. 1973).  The plaintiff must establish "a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury."  *Id.*

Merck argues that Musselman has failed to plead the existence of any causal connection between the termination and her alleged physical injuries.  Musselman cites several physical symptoms as evidence of her distress, including severe depression, suicidal tendencies, humiliation, sleeplessness, and the impairment of major life activities.  Merck claims that Musselman began to suffer these symptoms long before her termination and indeed took her leave of absence because of some of these symptoms.  Merck argues that Musselman's allegations thus belie the notion of a causal connection between her symptoms and her termination.

Merck fails to note that Musselman's claim is based not only upon her termination, but also upon Merck's alleged failure to accommodate her during the period of her unpaid leave.  (*See,*

-10-

*e.g.*, Compl. ¶ 54 ("Defendant's negligent conduct throughout Mrs. Musselman's leave of absence and termination proximately caused severe shock and emotional distress which then naturally resulted in injury to Mrs. Musselman.")).  Specifically, Musselman alleges that Merck demanded her return to work after the denial of her long-term disability, denied her request for an extended leave of absence, rejected her request to telecommute, and denied her request to utilize her contacts at Merck to secure a new position.  Musselman clearly alleges that her ongoing difficulties with Merck during this time period increased her depression and that she became suicidal in February 2005, whereupon she was hospitalized and diagnosed with bipolar disorder.  (*See* Compl. ¶¶ 15, 17.)  The complaint alleges that these specific symptoms arose during the time period of Merck's alleged failure to accommodate.  Such allegations are sufficient to satisfy the causation element of Musselman's claim.

Furthermore, Musselman alleges one physical injury that clearly occurred for the first time after her termination, namely, the cuts that she inflicted upon herself.  For its part, Merck argues that it had no reason to know that Musselman would harm herself if terminated.  In the typical case, the court measures the defendant's standard of conduct "by the reaction to be expected of a normal person."  *Hughes*, 197 S.E.2d at 219.  More specifically, "*[a]bsent specific knowledge by a defendant of*

*a plaintiff's unusual sensitivity*, there should be no recovery for mental or emotional disturbance and consequent physical injury to a hypersensitive person where a normal individual would not be affected under the circumstances." *Id.* (emphasis added). In this case, Musselman clearly alleges that she made Merck aware of her condition and of the fact that her doctors advised her not to return to work. Such is sufficient to allege that Merck had specific knowledge of Musselman's unusual sensitivity. Accordingly, the Court will deny Merck's motion to dismiss Count III.

D. <u>Failure to State a Claim for Intentional Infliction of Emotional Distress</u>

A Virginia claim for intentional infliction of emotional distress requires the plaintiff to plead and prove by clear and convincing evidence that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Russo*, 400 S.E.2d at 162. With respect to the second element, the challenged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). It is the Court's responsibility to determine at the outset "whether the facts alleged will support a

finding of both outrageousness and severe emotional distress." *Id.*

Plaintiffs who allege claims for intentional infliction of emotional distress based on employment actions face a sizeable bar to recovery. Courts applying Virginia law have regularly recognized that it is especially difficult to establish intentional infliction of emotional distress in the employment context. *See, e.g.*, *Burke v. AT&T Technical Services Co., Inc.*, 55 F. Supp. 2d 432, 441 (E.D. Va. 1999) (holding that a demotion and termination allegedly based on racial discrimination, while "insidious and unacceptable," did not constitute outrageous conduct); *Beardsley v. Isom*, 828 F. Supp. 397, 401 (E.D. Va. 1993), *aff'd*, *Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994) (holding that actions allegedly taken in retaliation for the plaintiff's complaints of sexual harassment did not rise to the requisite level of severity); *Harris v. Norfolk and W. Ry. Co.*, 720 F. Supp. 567, 568 (W.D. Va. 1989) (holding that a demotion allegedly based on gender discrimination did not constitute the "unconscionable abuse" necessary to state a Virginia claim for intentional infliction of emotional distress).

In this case, the "outrageous conduct" alleged by Musselman merely consists of a series of employment actions, culminating in her termination. Merck's demands that Musselman return to work, denial of her requests for an extended leave of

absence, disapproval of her request to telecommute, rejection of her request to secure a new position through her own contacts, and ultimate termination of Musselman simply do not rise to the level of "atrocious" conduct that goes "beyond all possible bounds of decency" and is "utterly intolerable in a civilized community," as required by Virginia law.  *See Russo*, 400 S.E.2d at 162.  Accordingly, the Court will dismiss Count II.

### IV.  Conclusion

For the foregoing reasons, the Court will deny Defendant's motion to dismiss Count III and grant Defendant's motion to dismiss Count II.  An appropriate Order will issue.


September 13, 2006             _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                  UNITED STATES DISTRICT COURT JUDGE